Eugene T. Franklin CA SBN 12488
Barbara F. Green, CA SBN 150320
Franklin Employment Law Group
Attorneys at Law
22762 Main Street
Hayward, California 94541
Telephone: (510) 538-0969
Facsimile: (510) 538-6502

Attorneys for Plaintiff
Shamaneen Khan

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shamaneen Khan,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>The Permanente Medical Group, Incorporated, A California Corporation; SEIU United Healthcare Workers-West, a California Corporation and DOES 1-50, inclusive,<br><br>　　　　Defendants. | Case No.: C08-01783 WHA<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**<br><br>Date: May 29, 2008<br>Time: 8:00 a.m.<br>Judge: William H. Alsup<br>Courtroom: 9, 19th Floor<br>[Date scheduled for Motion to Dismiss]<br><br>Date: June 19, 2008<br>Time: 8:00 a.m.<br>Judge: William H. Alsup<br>Courtroom: 9, 19th Floor<br>[Date set for Plaintiff's Motion to Remand]<br><br>Complaint Filed: March 7, 2008<br>Removed: April 3, 2008 |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**
**[CASE NO.: C08-01783 WHA]**

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Facts Underlying This Lawsuit......................................................................3

        i.    Factual Allegations of Plaintiff's Complaint................................................3

        ii.    Factual Allegations of Declaration of Defendant
             UHW's Agent.................................................................................................5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    The Removal Statute Is Strictly Construed, and the Court must Resolve Any
             Doubts in Favor of Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.    Plaintiff's State Discrimination Claims Are Not Pre-Empted
             by Section 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        C.    Genuine Issues of Fact Preclude Summary
             Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        D.    Plaintiff Is Entitled to Attorneys' Fees and Costs Incurred
             in Litigating this Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**
**[CASE NO.: C08-01783 WHA]**

# TABLE OF AUTHORITIES

**FEDERAL STATUTES:**

28 U.S.C. § 1441(b)..........................................................................................................1, 7

28 U.S.C. § 1447(c)............................................................................................................16

29 U.S.C. § 185....................................................................................................................2

**FEDERAL RULES:**

FRCP 12(b)(6).....................................................................................................................2

FRCP 56..............................................................................................................................2

FRCP 11............................................................................................................................16

**FEDERAL CASES:**

*Ackerman v. Western Electric Company, Inc.,*
860 F.2d 1514, 1517 (9th Cir. 1988)..................................................................................13

*Cook v. Lindsay Olive Growers,* 911 F.2d 233 (9th Cir. 1990)..........................3, 12, 13, 14, 15

*Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)....................................................3, 7

*Lingle v. Norge Division of Magic Chef, Inc.,*
823 F.2d 1031, 1046, n. 17...............................................................................................9, 11

*Madision v. Motion Picture Set Painters and Sign Writers Local*
729, 132 F.Supp.2d 1244, 1257..........................................................................................8

*Miller v. AT&T Network Systems,* 850 F.2d 543, 548 (9th Cir. 1988).............................3, 12, 14, 15

*Title VII,* 1964, 42 U.S.C. 200e.................................................................................10, 11, 12

**STATE CASES:**

*Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974)......................................................10, 11

*Caterpillar v. Williams,* 482 U.S. 386, 395 (1987).................................................................1, 8

*Fort Halifaz Packing Co. v. Coyne,* 482 U.S. 1, 21 (1987)..........................................................7

*Lingle v. Norge Division of Magic Chef, Inc.,*
486 U.S. 399, 412-413.............................................................................2, 7, 9, 10, 11, 12, 13

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108 (1941)................................................7

*Steele v. Louisville & N. R. Co.,* 323 U.S. 192 (1944)...............................................................11

*Tunstall v. Brotherhood of Locomotive Firemen,* 323 U.S. 210 (1944)......................................11

-ii-

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND
[CASE NO.: C08-01783 WHA]**

**CALIFORNIA CODES:**

*Cal. Gov.'t Code Sec.* 12960 (West Supp.) 1990)..................................................................................13, 15

*Cal. Gov.'t Code Sec.* 12940/(a)................................................................................................12, 13, 14, 15

-iii-

# INTRODUCTION

On March 7, 2008, Plaintiff Khan filed in the Superior Court of the County of Alameda of the State of California a complaint against The Permanente Medical Group, Inc., a California Corporation, and the SEIU United Healthcare Workers-West, a California Corporation, respectively, Defendant PMG and Defendant UHW, or defendants. Plaintiff's complaint alleges only state anti-discrimination claims against defendants. See the complaint, ¶¶ 2, 8 & 29, et al. Specifically, the complaint alleges that defendants in violation of the California Fair Employment and Housing Act (FEHA), California Government Code section 12940 et seq., discriminated against plaintiff based on her religion, failed to provide reasonable accommodation for her sincerely held religious beliefs and/or observances, and failed to prevent religious discrimination in employment. See the complaint, ¶¶ 2, 8 & 29, et al. As to Defendant PMG, plaintiff's complaint also alleges that said defendant wrongfully terminated her employment in violation of California's public policy against religious discrimination in employment. See the complaint, ¶¶ 38-40.

Plaintiff, as the master of her complaint, could have, but chose not to file federal claims against defendants. See *Caterpillar v. Williams,* 482 U.S. 386, 395 (1987). Nor are plaintiff's claims federal in character. Nor does plaintiff's complaint assert any claims based on any rights or remedies that grow out of a collective bargaining agreement or any claims substantially dependent upon analysis of a collective bargaining agreement. See the complaint, ¶¶ 2, 8 & 29, et al.

Nevertheless, on April 3, 2008, defendants removed plaintiff's action from the state court to this federal court pursuant to 28 U.S.C. § 1441(b). Notice of Removal, ¶ 10. Defendants' removal notice asserts that resolution of plaintiff's claims will require a determination of defendants' obligations to plaintiff under a collective bargaining agreement (CBA). Notice of Removal, ¶ 6. Additionally, the removal notice asserts that plaintiff's claims will require analysis, application, and interpretation of Defendant UHW's constitution and by-laws. Notice of Removal, ¶ 6.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND**
**[CASE NO.: C08-01783 WHA]**

Subsequently on April 8, 2008, Defendant UHW filed a motion to dismiss plaintiff's complaint pursuant to FRCP 12(b)(6) arguing, "Plaintiff's claims are preempted by federal labor law because they essentially allege that the Union breached its duty of fair representation to her and require the Court to interpret and apply the collective bargaining agreement between the Union and TPMG."  Defendant UHW's Notice of Motion and Motion and Memorandum in Support Thereof to Dismiss [Memorandum in Support of Motion to Dismiss] at 1:23-25.  Defendant UHW asserts that plaintiff's claims are preempted by section 301 of the Labor Relations and Management Act [LMRA] set out in 29 U.S.C. § 185.  *Id*. at 2-3.  Defendant UHW also asserts that plaintiff's claims are barred by the six-month statute of limitations applicable to section 301 claims.  *Id*. at 2:1-4.  Defendant UHW seeks summary judgment arguing, because "there is no material fact in dispute," it is entitled to judgment as a matter of law," pursuant to FRCP 56.  *Id*. at 2-3:1-2.

This memorandum is submitted by Plaintiff Khan in opposition to Defendant UHW's motion to dismiss.  The memorandum is further submitted in support of Plaintiff Khan's motion for remand of her lawsuit to state court.  Plaintiff Khan submits that Defendant UHW's motion to dismiss is without merit on all grounds and must be denied.  Section 301 does not preempt plaintiff's state anti-discrimination claims.  See *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 412-413; *Cook v. Lindsay Olive Growers,* 911 F.2d 233 (9th Cir. 1990); *Miller v. AT&T Network Systems*, 850 F. 2d 543, 548 (9th Cir. 1988).  Her claims are based entirely on state law, do not rely on any provision of the CBA, and do not require analysis, application, or interpretation of the CBA or Defendant UHW's constitution and by-laws.  Rather, plaintiff's claims require solely a factual determination of whether defendants' conduct as alleged in her complaint violated California law against discrimination in employment, which is a material fact in dispute among the parties.  Thus, summary judgment in favor of Defendant UHW [or Defendant PMG] is not warranted.  Remand of plaintiff's solely state anti-discrimination claims to the state court is however mandated.  See *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

# SUMMARY OF FACTS

**A.     Facts Underlying This Lawsuit**

**I.      Factual Allegations of Plaintiff's Complaint**

Plaintiff's complaint sets out the facts: On or about March 18, 1998, Defendant PMG hired plaintiff for the position of service partner, and since her hiring, plaintiff has been a member of Defendant UHW. Since October 1998, plaintiff had been working as a medical assistant. Plaintiff is a devout Muslim and her creed requires that all Muslims make a once in a lifetime Hajj, pilgrimage to Mecca in Saudi Arabia. For the last several years, the Hajj had occurred in December or January. According to the Muslim religion, the pilgrimage each year is determined by the sighting of the new moon in December or January. In January 2006, plaintiff requested Defendant PMG grant her vacation from about December 11, 2006, to about January 5, 2007; she planned to go on her Hajj during that period..

Defendant PMG instead placed plaintiff on a waiting list for the dates of December 22, 26, 27, 29 and January 2, 2007, and granted her request for the other dates. In or about January 2006, plaintiff complained to her manager, Debbie Henning-Cook. Plaintiff told her manager that she needed all the dates requested for her religious pilgrimage to Mecca. Plaintiff's manager told plaintiff to wait and see what happened with the waiting list. In or about June 2006, plaintiff applied for vacation on January 8 to 10, 2007. Defendant PMG approved those dates.

In or about October 2006, plaintiff again told her manager that she needed Defendant PMG's approval for the dates of December 22, 26, 27, 29, 2006, and January 2, 2007, because she had to go on the religious pilgrimage to Mecca during that period. On or about November 20, 2006, plaintiff's manager told her that Defendant PMG would not approve those dates and that if plaintiff went on her pilgrimage on those dates, she would be disciplined. Thereafter, plaintiff complained to Defendant UHW about Defendant PMG's conduct toward her. Plaintiff told her union shop steward that she had requested vacation dates for a religious pilgrimage, and Defendant PMG had denied her some of the dates she needed, and that Defendant PMG had threatened her with discipline if she used the denied dates to go on her religious pilgrimage to

-3-

Mecca. Defendant UHW's agent told plaintiff that Defendant UHW could not do anything to help her and that Defendant PMG could terminate her employment for job abandonment if plaintiff went on her religious pilgrimage on the dates denied for vacation. Thereafter, plaintiff also complained about Defendant PMG 's conduct to Defendant UHW's senior shop agent who told plaintiff that Defendant UHW could do nothing to help her.

In or about December 2006, Defendant PMG's managers asked plaintiff if she was still going on her pilgrimage. Plaintiff answered affirmatively and again requested Defendant PMG's approval of the dates of December 22, 26, 27, 29, 2006, and January 2, 2007, for that religious observance. Plaintiff's managers reiterated that Defendant PMG would not approve the time off and that Defendant PMG would also not approve a leave of absence without pay for those dates. On or about December 15, 2006, Defendant PMG approved December 22, 2006, as a vacation day for plaintiff but still refused to approve December 26, 27, 29, and January 2, 2007.

Saudi Arabia officials announced that the 2006 Hajj, Muslim pilgrimage to Mecca, would occur on December 26 to 30, 2006. On December 21, 2006, plaintiff left the United States for her religious pilgrimage in Mecca, Saudi Arabia. On December 26, 27, 29, 2006, and January 2, 2007, plaintiff telephoned Defendant PMG to notify it that she was in Mecca for the pilgrimage. On or about January 16, 2007, Defendant PMG informed plaintiff that effective January 17, 2007, her employment would be terminated for job abandonment.

On or about January 17, 2007, plaintiff complained to Defendant UHW about Defendant PMG's termination of her employment based on religious discrimination. Defendant UHW's agent told plaintiff, "We can not accommodate every religion." In addition, on or about August 2, 2007, despite plaintiff's request for Defendant UHW to file a grievance against Defendant PMG, Defendant UHW told plaintiff that it would not pursue an unjust discipline grievance against defendant Permanente on her behalf.

ii. **Factual Allegations of Declaration of Defendant UHW's Agent**

Defendant UHW has submitted the declaration of Eric Smith in support of its motion for summary judgment. Attached to the declaration are exhibits of copies of correspondence between plaintiff and defendants. The declaration states Mr. Smith is the Union Field Representative and Organizer for Defendant UHW and as such he was "involved in the appeal process regarding the grievance filed on behalf of" plaintiff. Declaration of Eric Smith, ¶ 1. The declaration further states that Defendant UHW's agent "received and reviewed" a copy of the termination letter dated January 18, 2007, from Defendant PMG's agent, Ms. Hennings-Cook to plaintiff. *Id*. at ¶ 11. The declaration states that a true and correct copy of the termination letter is attached to the declaration. Without waiving any evidentiary objections, including hearsay objections to these documents, plaintiff notes that these documents support plaintiff's contention that her lawsuit is about whether defendants violated California's anti-discrimination laws and not about whether defendant breached obligations owed by defendants to plaintiff under a CBA. Specifically, the documents produced by Defendant UHW squarely show that "[i]n reaching the decision not to pursue Ms. Khan's grievance," Defendant UHW's agent had "reviewed" a the termination letter which put the union on notice of an anti-discrimination claim by plaintiff against Defendant PMG. Defendant PMG's termination letter "reviewed" by Defendant UHW's agent states *inter alia*:

> This letter is to inform you [Ms. Khan] that you are being terminated for unauthorized time off/job abandonment. **Beginning on January 20, 2006 you requested time off for which you were denied and placed on the "wait list." We met with you multiple times over the past several months to discuss your requests and you were informed every time of the denial.** However, on December 18, 2006 you elected to take the time off without approval for all of the extended time that was denied. . . .
> "**The Staffing Department notified me during your absence that you called four times notifying them that you[] were out of the County on a religious pilgrimage. As a result of your actions your employment with Kaiser Permanent has been terminated effective January 17, 2007.**

Exhibit "F" to Declaration of Eric Smith [emphasis added]. Provisions of the CBA are not recited in or relied upon in the termination letter. *Ibid*. Based on his review of the termination letter, Defendant UHW's agent concluded that plaintiff's grievance "lacked merit." Declaration of Eric Smith, ¶¶ 6. 7, 12.

-5-

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND [CASE NO.: C08-01783 WHA]**

# ARGUMENT

## A. The Removal Statute Is Strictly Construed, and the Court must Resolve Any Doubts in Favor of Remand

Defendants removed plaintiff's action to this court pursuant to 28 USC subdivision (b) of section 1441, claiming that section 301 confers subject-matter jurisdiction on this court. Notice of Removal, 10. Section 1441(b) provides: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties of laws of the United States shall be removable without regard to the citizenship or residence of the parties."

The Supreme Court has however noted that the language of the removal statutes evidences not only the purpose of Congress to restrict the jurisdiction of the federal courts on removal, but the policy of Congress to mandate strict construction of such legislation against removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). "'Due regard to the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' Citations omitted." *Id*. at 109. The federal court must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus, supra*, 980 F.2d, 566. In addition, the federal court must be mindful that in the area of labor law, the Supreme Court has emphasized that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State.'" *Lingle, supra*, 486 U.S., 412, citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987). Further, the Supreme Court made the point clear "that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, supra*, 482 U.S., 393.

Strict construction of section 1441(b) as mandated by Congress leaves no doubt that section 301 does not confer federal subject matter jurisdiction on this Court of this action and that remand is mandated.

**B.      Plaintiff's State Discrimination Claims Are Not Pre-Empted by Section 301**

Defendant UHW argues that plaintiff's "claims are preempted on two grounds: (1) the "conduct at the heart of the controversy' involves whether or not the Union breached its duty of fair representation to" plaintiff; (2) her "claims require the Court to look to and interpret the parties' collective bargaining agreement." Motion to Dismiss at 6.

In making its argument, Defendant UHW intentionally leaves out the factual allegation in plaintiff's complaint which sets out the "heart of the controversy."  See Motion to Dismiss at 6-8.  That factual allegation is that, when plaintiff complained to Defendant UHW about Defendant PMG's termination of her employment based on religious discrimination, Defendant UHW's agent told plaintiff, "We can not accommodate every religion," and Defendant UHW refused to file a grievance against Defendant PMG on plaintiff's behalf for religious discrimination and wrongful termination.  See the complaint, ¶¶ 16-17 & 23-24.  Plaintiff is thus only complaining about discriminatory conduct by Defendant UHW and not fair representation by Defendant UHW.  The "heart of controversy" of this action is discrimination based on religion by Defendants UHW and PMG in violation of California law against religious discrimination.  See the complaint. Contrast *Madision v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F.Supp.2d 1244, 1257.

It is manifestly clear that section 301 "does not pre-empt state anti-discrimination laws" *Lingle, supra*, 486 U.S. , 413, citing *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031, 1046, n. 17.  Defendant UHW does not argue otherwise. See Motion to Dismiss at 6-8.  Instead Defendant UHW frivolously contends that "plaintiff's state law claims" are "artfully [pled] against the Union as 'religious discrimination' claims.  Motion to Dismiss at 6.

Long ago in 1988, the Supreme Court was confronted in *Lingle* with the question of whether an employee covered by a CBA that provides her with a contractual remedy for discharge without just cause may enforce her state law remedy for retaliatory discharge in court. *Lingle, supra*, 486 U.S., 401.  In Illinois where the case arose, an employee who is discharged for filing a

-7-

worker's compensation claim may recover compensatory and punitive damages against her employer. The Court of Appeals "held that the application of the state tort remedy was pre-empted by" section 301. *Ibid*. The Supreme Court disagreed. The Supreme Court concluded that the state law remedy was "independent" of the collective bargaining agreement, reasoning,

> Illinois courts have recognized the tort of retaliatory discharge for filing a worker's compensation claim, [citation] have held that it is applicable to employees covered by union contracts, [citation]. "[T]o show retaliatory discharge, the plaintiff must set forth sufficient facts from which it can be inferred that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." Citations. Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a nonretaliatory reason for the discharge, [citation]; this purely factual inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

*Id*., 486 U.S., 408. The *Lingle* Court rejected the Court of Appeals' conclusion that the state tort of retaliatory discharge was "inextricably intertwined with the collective-bargaining agreements because it implicates the same analysis of the facts as would an inquiry under the just cause provisions of the agreements." *Id*., 486 U.S., 409. It rejected the conclusion that "such parallelism renders the state-law analysis dependent upon the contractual analysis." *Ibid.* "In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for 301 pre-emption purposes." *Id*., 486 U.S., 409- 410. The *Lingle* Court held "that an application of state law is preempted by [section] 301 . . . only if such application requires the interpretation of a collective-bargaining agreement." *Id*., 486 U.S., 413.

The *Lingle* Court also stated that "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Id*, 486 U.S., 411. In fact, the Supreme Court had previously "on numerous

-8-

occasions, declined to hold that individual employees are, because of the availability of arbitration [pursuant to a CBA], barred from bringing claims under federal statutes." *Id.*, 486 U.S., 411. For example in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974), the Supreme Court held that an employee's federal law anti-discrimination claim against an employer was not foreclosed by prior submission of his claim to final arbitration under the non-discrimination clause of a CBA. The *Alexander* Court observed that Congress enacted the federal statute against discrimination in employment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 200e et seq., "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. . . . *Congress . . . established a procedure whereby existing state and local equal employment opportunity agencies,* as well as the [Equal Opportunity] Commission, *would have an opportunity to settle disputes* through conference, conciliation, and persuasion *before the aggrieved party was permitted to file a lawsuit.* [Italics added.] In the Equal Employment Opportunity Act of 1972 . . ., *Congress amended Title VII to provide the Commission with further authority . . . to institute civil actions against* employers *or unions named in a discrimination charge*. [Italics added.]" *Alexander, supra*, 415 U.S., 44. In allowing civil actions against unions named in a discriminatory charge, the *Alexander* Court noted,

> A further concern is the union's exclusive control over the manner and extent to which an individual grievance is presented. Citations. In arbitration, as in the collective-bargaining process, the interests of the individual employee may be subordinated to the collective interests in the bargaining unit. Citation. Moreover, harmony of interest between the union and the individual employee cannot always be presumed, especially where a claim of racial discrimination is made. See e.g., *Steele v. Louisville & N. R. Co.*, 323 U.S. 192 (1944); *Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S. 210 (1944). And a breach of the union's duty of fair representation may prove difficult to establish. Citations. *In this respect, it is noteworthy that Congress thought it necessary to afford the protections of Title VII against unions as well as employers.* See 42 U.S.C. 2000-2(c).

*Alexander, supra,* 415 U.S., 58 n. 19. Further, it was plain to the *Alexander* Court that Congress has expressed a federal policy against discriminatory employment practices, that policy is independent of and not in conflict with the federal policy favoring arbitration of labor disputes under a CBA, and that both policies "can be accommodated by permitting an employee to pursue

-9-

fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.,* 415 U.S., 44-45 & 59-60.

It is also plain that Congress' federal policy against discriminatory employment practices extends to permitting an employee to pursue fully his state anti-discrimination claims without fear of pre-emption by section 301. The *Lingle* Court acknowledged as much, noting that the *Lingle* "Court of Appeals 'recognize[d] that 301 does not pre-empt state anti-discrimination laws, . . . [*Lingle, supra,*] 823 F.2d, at 1046, n. 17 . . . because Congress has affirmatively endorsed state antidiscrimination remedies in Title VII . . ., see 42 U.S.C. 2000e-5(c) and 200e-7 . . . . The operation of the antidiscrimination laws does . . . illustrate the relevant point for 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory - or retaliatory - discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract. . . . In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective bargaining agreement.'" *Lingle, supra*, 486 U.S., 412-413.

In *Cook, supra*, 911 F.2d 233, the Ninth Circuit held that an employee's state claim against religious discrimination in employment pursuant to California's FEHA, section 12940(a), was not pre-empted by section 301. The Court of Appeals noted that section 12940(a) "provides that it is an unlawful employment practice "[f]or an employer, because of the . . . religious creed . . . of any person, . . . to bar or to discharge such person from employment . . . or discriminate against such person in compensation or in terms, conditions or privileges of employment." *Id*., *Cook, supra*, 911 F.2d 238. The Ninth Circuit applied a three-step test set out in its earlier decision of *Miller, supra*, 850 F.2d 543, 545: "(1)whether the CBA contains provisions that govern the act giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. The Ninth Circuit answered the first question "yes." The CBA had a provision

-10-

that prohibited religious discrimination. *Cook, supra*, 911 F.2d, 240. The Ninth Circuit answered the second question "yes," stating "California in Sec. 12940(a) has articulated a clear standard that does not require interpretation of the CBA." *Cook, supra*, 911 F.2d, 240. Applying *Lingle, supra*, 486 U.S., 412-413, the Ninth Circuit iterated, "The mere fact that a broad contractual protection against discriminatory . . . discharge may provide a remedy for conduct that coincidentally violates state law violation does not make the existence or the contours of the state law violation, dependent upon the terms of the private contract." *Cook, supra*, 911 F.2d, 240. The *Cook* court observed that it had earlier interpreted section 12940(a)'s prohibition on discrimination of physical handicap in *Ackerman v. Western Electric Company, Inc.*, 860 F.2d 1514, 1517 (9th Cir. 1988), holding that "California's statute confers upon employees certain rights not to be discriminated against . . . . That right is defined and enforced under state law without reference to the terms of any collective bargaining agreement. [The employee's] state-law claim is consequently independent of the agreement. That [he] might also have separate remedies under the bargaining agreement makes no difference. *Cook, supra*, 911 F.2d, 240. "Finally, [the Ninth Circuit concluded that] the right not to be discriminated against on the basis of religion cannot be removed by private contract. Section 12940 confers a right that is nonnegotiable and applies to unionizes and nonunionized workers. [Citation.] Cook's claim under Sec. 12940(a) is not preempted, and was filed within the statute's one-year limitations period. See Cal. Gov.'t Code Sec. 12960 (West Supp. 1990). *Cook, supra*, 911 F.2d, 240.

The Ninth Circuit also held, "There is no doubt that Sec. 12940(a) establishes a California public policy against religious discrimination in the workplace" and that Cook's claim for discharge in violation of that public policy was not pre-empted by section 301. *Cook, supra*, 911 F.2, 240-241.

  Defendant UHW offers no credible argument, for not applying *Cook's* holding that California's FEHA's prohibition against religious discrimination in the workplace is not applicable to this case. Defendant UHW has failed to identify any provision of the CBA that govern the act giving rise to plaintiff's state claim. Motion to Dismiss at 6-8. Thus, the answer to the first question of the *Miller* test is "no" and application of the remainder to the *Miller* test is

unnecessary. Nevertheless, Defendant UHW has failed to demonstrate that the Ninth Circuit was wrong when it answered the second question "yes" when it held, "California in Sec. 12940(a) has articulated a clear standard that does not require interpretation of the CBA." *Cook, supra*, 911 F.2d, 240. It cannot for California has articulated a standard sufficiently clear that plaintiff's claims of religious discrimination can be evaluated without consideration of the CBA. That clear state standard against religious discrimination in the workplace is set out *inter alia* in section 12940 as follows:

> It shall be an unlawful employment practice . . . :
>
> (a)  For an employer, because of the . . . religious creed . . . of any person to bar or to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.
> (b)  For a l*abor organization*, because of the . . . religious creed . . . of any person, to exclude, expel or restrict from its membership the person, *or to provide only second-class or segregated membership . . . or to discriminate in any way against any of its members* or against any employer or against any person employed by an employer.
> (h)  For any employer, *labor organization* . . . to harass, discharge, expel or otherwise discriminate against any person because the person has opposed any practices forbidden under this part . . . .
> (k )  For an employer, *labor organization* . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.
> (l)  For an employer or other entity covered by this part . . . to bar or to discharge a person from employment . . . or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of *a conflict between the person's religious belief or observance and any employment requirement,* unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with his or her religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship on the conduct of the business of the employer or other entity covered by this part. *Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath or other religious holy day or days, and reasonable time necessary for travel prior and subsequent to a religious observance.*

[Italics added.] Defendant UHW has also failed to demonstrate that the Ninth Circuit was wrong when it answered the third question of the *Miller* test "yes": The California law, section 12940, against discrimination based on religion cannot be removed by private contract. Section 12940 confers a right that is nonnegotiable and applies to unionized and nonunionized workers. See *Cook, supra*, 911 F.2d, 240.

-12-

Notwithstanding, Defendant UHW's contention, plaintiff's claims of discrimination based on religion are not pre-empted by section 301. In addition, plaintiff's state claims were timely filed within the California's statute one-year limitations. See Cal. Gov't Code Sec. 12960.

**C.  Genuine Issues of Fact Preclude Summary Judgment**

Defendant UHW's demand for summary judgment must also be rejected. A material issue of fact exist: whether Defendant UHW engaged in discriminatory conduct based on religion against plaintiff.

Defendant UHW's demand is based on its contention that it complied with the CBA. But Defendant UHW has entirely failed to demonstrate that its conduct did not violate California's law against religious discrimination, FEHA, section 12940(a). Rather the evidence upon which Defendant UHW wishes to rely in support of its motion for summary judgment manifests that material fact in dispute. The termination letter produced by Defendant UHW states clearly that Defendant PMG terminated plaintiff's employment because she was not working but on a religious pilgrimage. The declaration of Defendant UHW's agent states that he reviewed the termination letter. Plaintiff's complaint alleges that when she complained to Defendant UHW, the termination of her employment was based on religious discrimination. Defendant UHW told plaintiff, "We can not accommodate every religion." Confronted squarely with the termination letter which set forth facts raising a claim of religious discrimination committed by Defendant PMG against plaintiff, Defendant UHW's agent concluded that plaintiff's grievance "lacked merit." See Declaration of Eric Smith, ¶¶ 6. 7, 12. A material fact in dispute exists on whether Defendant UHW engaged in religious discrimination against plaintiff in violation of California's anti-discrimination laws. See also plaintiff Khan's declaration.

**D.  Plaintiff Is Entitled to Attorneys' Fees and Costs Incurred in Litigating this Motion**

If grounds for removal are lacking or if there is a defect in the removal procedure, the federal court should order the removing defendants to pay plaintiff "just costs . . . including attorney's fees" incurred as a result of the improper removal. *28 U.S.C. § 1447(c)*; see also *Fed. Rule Civ. Proc., Rule 11*. Here, the removal of this action was simply a tactic borne of

-13-

defendants' distrust of the state court's ability to consider their defenses (including their anticipated preemption defenses). At a minimum, Plaintiff should recover her attorneys' fees as set forth in the Declarations of Eugene T. Franklin in the amount of seventeen thousand five hundred dollars ($17,500.00).

## CONCLUSION

For all the foregoing reasons, Defendant UHW"s motion to dismiss the complaint and motion for summary judgment should be denied; further, this matter should be remanded to the state court; and Plaintiff should be awarded her attorneys' fees.

Dated: May 5, 2008

Respectfully submitted:

FRANKLIN EMPLOYMENT LAW GROUP

/s/

By: _____
EUGENE T. FRANKLIN
Attorneys for Plaintiff Shamaneen Khan

-14-

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT UHW'S MOTION TO DISMISS [FED.R.CIV.PROC. 12(b)(6)] AND IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND [CASE NO.: C08-01783 WHA]**